UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EDWARD H. EDGERTON, JR., <br><br> Plaintiff <br><br> v. <br><br> HILLARD, et al., <br><br> Defendants | Case No.: 2:23-cv-00693-APG-NJK <br><br> **Order (1) Denying Defendant's Motion for Summary Judgment and (2) Granting Motion to Seal** <br><br> [ECF Nos. 38, 39] |

Plaintiff Edward Edgerton, Jr. sues Nevada Department of Corrections (NDOC) correction officer Alexander Hillard for events that took place while Edgerton was incarcerated at Southern Desert Correction Center (SDCC). After screening, Edgerton's remaining claims against Hillard are for Eighth Amendment excessive force and Fourteenth Amendment equal protection.

Hillard moves for summary judgment, arguing that any use of force was de minimis and in response to Edgerton's refusal to obey Hillard's orders. Hillard notes that Edgerton never reported any injuries related to the incident, which shows that the force used was de minimis. And Hillard argues he is entitled to qualified immunity for the excessive force claim. As for the equal protection claim, Hillard asserts that he had a rational basis for treating Edgerton differently than the other inmate who was nearby during the incident because only Edgerton refused to follow Hillard's order to leave the gym. Hillard also argues there is no evidence that he treated Edgerton differently based on Edgerton's race. Finally, Hillard argues there is no basis for Edgerton's request for punitive damages. Edgerton opposes, arguing that the use of force was not de minimis, he complied with Hillard's order to submit to a search so there was no

need to use force, and Hillard treated him differently than another inmate of a difference race who was also in the gym.

I deny Hillard's motion because a reasonable jury could find that Hillard used excessive force in violation of the Eighth Amendment, treated Edgerton differently based on Edgerton's race, and may be subject to punitive damages. Additionally, because genuine disputes remain regarding the excessive force incident, specifically with respect to whether Edgerton was complying with Hillard's commands before Hillard allegedly kicked Edgerton, Hillard is not entitled to qualified immunity.

**I. BACKGROUND**

In early 2021, Edgerton was incarcerated at SDCC. ECF No. 38-2 at 2. On February 4, 2021, Edgerton, who is Black, and a Hispanic inmate went into the gym to plug their MP3 players into a kiosk to download music. ECF Nos. 38-7 at 7; 45 at 2. According to Edgerton, entering the gym to use the kiosk was "common practice." ECF No. 45 at 2. Edgerton states that Hillard approached Edgerton and asked him "what the fuck" he was doing in the gym and told him to disconnect his MP3 during the download process. *Id.*

Edgerton apologized but requested a couple of minutes to download something onto the MP3 player. ECF Nos. 38-7 at 9; 45 at 2. Hillard told Edgerton he had to disconnect. ECF No. 38-7 at 9. Edgerton responded that doing so would damage the MP3 if the download was not completed and asked why he was being singled out. *Id.* Hillard stated "It's always your people!" ECF No. 45 at 2. Hillard "became enraged," took out his pepper spray, and threatened to "spray the fuck out of" Edgerton if Edgerton did not remove the MP3 from the kiosk. *Id.*; ECF No. 38-7 at 9-10. Edgerton asked why Hillard was taking such a "hard line" when only two inmates were present. ECF No. 38-7 at 10. Hillard pointed the pepper spray at Edgerton and told him to get

against the fence. *Id.* Edgerton "put [his] hands up in fear," while the other inmate "took cover." ECF No. 45 at 2.

Edgerton moved to the fence and assumed the position for a body search as ordered. *Id.* at 2-3. According to Edgerton, Hillard kicked his feet and ankles until Edgerton "was nearly doing a split and causing excruciating pain." *Id.* at 3. Edgerton told Hillard that he had a left foot ailment and bunions on his right foot, but Hillard continued to kick his feet and ankles until another correctional officer told Hillard to stop. *Id.* After the search, Hillard gave the MP3 player to Edgerton and sent him on his way. ECF No. 38-7 at 10. Edgerton asserts that he sent a medical kite and was seen more than a month later. ECF No. 45 at 4. Edgerton asserts that his "foot was still in such bad shape that the medical provider ordered [him] a 3 day medical lay-in on 3-16-21." *Id.*

Hillard, perhaps unsurprisingly, offers a different version of events. According to Hillard, Edgerton entered the gym without permission and should not have been there at the time because a formal count of inmates in the unit was under way. ECF No. 38-10 at 3. Hillard states that other inmates, who were gym workers, were in the gym but were exiting the gym because it was time for the routine inmate count. *Id.* Hillard ordered all inmates, including Edgerton, to leave the gym for the inmate count. *Id.* Hillard asserts that he had to give this order to Edgerton more than once, but Edgerton did not comply and instead continued to download music onto the MP3 player. *Id.* According to Hillard, another inmate who was there complied with his order to leave, but Edgerton did not and instead approached Hillard "in an aggressive manner," so Hillard unholstered his pepper spray. *Id.* Hillard then called for assistance and ordered Edgerton against the wall to submit to a body search. *Id.* Hillard states that he gave this order because he could not tell if Edgerton had a weapon, and he needed to secure the area because he was the only

correctional officer in that area. *Id.* Hillard ordered Edgerton to widen his stance for the body search, but Edgerton did not comply, so Hillard used his left foot to hold Edgerton's foot while Hillard conducted the search. *Id.* Hillard denies that he kicked Edgerton, used profane language, or singled him out because of his race. *Id.* at 4.

Edgerton filed a grievance related to the incident and exhausted his administrative remedies related to that grievance. ECF Nos. 38-3; 38-7. Edgerton is Black and believes that Hillard treated him differently than the Hispanic inmate who was also in the gym and "doing the exact same thing." ECF No. 38-7 at 11, 30. He also asserted that Hillard "further [irritated Edgerton's] already damaged left foot." *Id.* at 30; *see, e.g.*, ECF No. 40-2 at 4, 111, 115-18, 190, 199-202 (documenting prior foot issues).

On March 8, Edgerton filed a medical kite asking when he would receive a replacement pair of "ortho" shoes. ECF No. 40-2 at 44. The kite did not mention any injuries from the incident with Hillard. *Id.* On March 10, Edgerton was seen for a potential chemical burn or rash from a substance he used while working in maintenance. *Id.* at 89, 229. On March 16, 2021, Edgerton sent a medical kite stating that he saw the nurse the week before for "a potential chemical burn from work." *Id.* at 43. That same day, Edgerton filed a medical kite stating that the potential chemical burn had gotten worse, had spread, and was itching. *Id.* at 145. He was seen the same day and was given medical orders to lay-in for 3 days. ECF No. 40-2 at 104. The lay-in order does not specify the reason for the lay-in. *Id.* However, the medical progress notes indicate that it was related to the rash. *Id.* at 218, 230.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A. Eighth Amendment Excessive Force**

1. Substantive Claims

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. U.S. Const. amend. VIII.  "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (simplified).  To establish an Eighth Amendment violation based on a use of force, a plaintiff must show the amount of force used was more than de minimis or otherwise involved force "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quotation omitted).  Additionally, the plaintiff must show the prison official acted with a culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

With respect to the amount of force used, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Bearchild v. Cobban*, 947 F.3d 1130, 1141 (9th Cir. 2020) (quotation omitted). The extent of injury an inmate suffered from an alleged use of force "is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 7 (quotation omitted). "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

"That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9. Rather, the "core judicial inquiry" focuses on whether the forced used was "nontrivial and was applied maliciously and sadistically to cause harm," rather than on the "extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (quotation omitted). A "relatively modest" injury may "limit the damages [the plaintiff] may recover," but lack of serious injury does not excuse an Eighth Amendment violation. *Id.* at 40.

When an Eighth Amendment claim is based on an allegation that a prison official used excessive physical force, the culpable state of mind inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," rather than a deliberate indifference standard. *Hudson*, 503 U.S. at 6-7. "[P]rison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as . . . the safety of the inmates themselves." *Whitley*, 475 U.S. at 320 (quotation omitted). Consequently, the deliberate indifference standard "does not adequately capture the importance of such competing obligations[] or convey the appropriate

6

hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Id.* The court considers several factors in determining whether force was applied maliciously and sadistically to cause harm, including:

> (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.

*Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). The question is "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

Hillard argues that the lack of serious injury to Edgerton suggests that Hillard used only a de minimis level of force, and using a low level of force is evidence that Hillard did not act with sadistic or malicious intent to cause harm. Hillard also contends that he used force in a good faith effort to restore order because, even by Edgerton's version of events, Edgerton disobeyed Hillard's commands to leave the gym. Hillard also asserts that Edgerton refused to broaden his stance for the body search, so even if Hillard kicked Edgerton, it was to restore discipline and enable the search.

Edgerton responds that I must view the facts in the light most favorable to him, and he asserts that he did comply with Hillard's orders and assumed the position for a search to avoid being pepper sprayed. He thus contends there was no need for Hillard to kick his feet and ankles, and that shows that Hillard was acting with the requisite mental state. And he asserts that he submitted a medical kite, was seen more than a month later, and his foot was still in such bad

condition that the medical provider ordered a three-day lay-in, so he suffered more than de minimis injury.

Viewing the facts in the light most favorable to Edgerton, a reasonable jury could find that Hillard violated his Eighth Amendment right against cruel and unusual punishment. Although Edgerton admits that he did not immediately comply with Hillard's orders to leave the gym, he asserts that he did comply with Hillard's order to assume the position for a body search. After Edgerton complied, Hillard allegedly spread Edgerton's legs so wide as to cause excruciating pain and kicked Edgerton's ankles and feet during the search. If the jury believes Edgerton, then they could find there was no need for the force used because Edgerton was complying with Hillard's commands. Absent a need for the force, a reasonable jury could conclude Hillard acted maliciously and sadistically to cause harm when he used that unnecessary force. Additionally, Edgerton asserts that his feet were still in such bad shape over a month later that the medical provider ordered a three-day medical lay-in. Although a reasonable jury could disbelieve that this was the basis for the medical lay-in order, as contemporaneous medical records suggest the lay-in was ordered in relation to a chemical burn or rash, I must view the evidence in the light most favorable to Edgerton at this stage. I therefore deny Hillard's motion on this basis.

### 2. Qualified Immunity

Hillard argues that there is no clearly established law that would have put him on notice that he would violate Edgerton's Eighth Amendment rights by holding his feet on Edgerton's while conducting a search after Edgerton failed to follow his orders. Edgerton does not specifically respond to the qualified immunity argument, but generally argues that the law

8

provides that unnecessary force is evidence that the defendant acted maliciously and sadistically to cause harm.

I deny Hillard's motion based on qualified immunity because Hillard does not frame the facts in the light most favorable to Edgerton. Instead, he assumes his use of force was justified by Edgerton's noncompliance. But Edgerton avers that he complied with the order to assume the search position. And Hillard relies on his assertion that he only placed his feet on Edgerton's feet and did not kick Edgerton. But Edgerton tells a different story.

It has long been clearly established that it is unlawful for a prison official to maliciously and sadistically use force to cause harm even if the inmate is not seriously injured. *Hudson*, 503 U.S. at 9. Taking Edgerton's version of facts as true, any reasonable prison official in Hillard's position would know that he could not spread a complying inmate's legs so far apart as to cause extreme pain and then repeatedly kick the compliant inmate's feet and ankles, as there would be no need to do so to restore order when the inmate is obeying the official's orders. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 795-96 (9th Cir. 2018) (holding that evidence that prison officials "inflicted severe injuries on appellees while they were not resisting, and even while they were unconscious" sufficed to support a jury verdict finding Eighth Amendment violations and denying qualified immunity).

**B. Fourteenth Amendment Equal Protection**

Hillard argues that he had a rational basis for treating Edgerton differently than the other inmate who was also in the gym because only Edgerton refused to comply with Hillard's order to leave and only Edgerton acted aggressively toward Hillard. Hillard contends that Edgerton did not disclose any other witnesses in discovery, so Edgerton will not be able to show that the other inmate was similarly situated. Edgerton responds that he and the other inmate were similarly

9

situated because they were both in the gym at the same time, and the other inmate did not leave and instead took cover when Hillard threatened to use pepper spray. Edgerton also asserts that Hillard used language that could suggest racial bias.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To prevail on an equal protection claim under 42 U.S.C. § 1983, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Viewing the facts in the light most favorable to Edgerton, genuine disputes remain regarding whether Hillard acted with discriminatory intent. Taking Edgerton's version as true, he was treated differently from a Hispanic inmate who was also in the gym using the kiosk to download music. Although Hillard contends other inmates in the gym obeyed his command to leave, Edgerton's version suggests that the Hispanic inmate did not leave because Edgerton states that the Hispanic inmate took cover when Hillard threatened to spray Edgerton with pepper spray. Additionally, Edgerton, who is Black, avers that Hillard stated to him "It's always your people!" ECF No. 45 at 2. If the jurors believe Edgerton, they reasonably could find this was a reference to Edgerton's race. I therefore deny Hillard's motion for summary judgment on Edgerton's equal protection claim.

**C.  Punitive Damages**

Hillard argues that even if kicking Edgerton was excessive, there is no evidence that Edgerton was injured, so there is no basis to award punitive damages for conduct that is malicious or in conscious disregard of Edgerton's safety. But as discussed above, a reasonable

jury could find that Hillard acted maliciously and sadistically for the purpose of causing pain. Thus, I deny Hillard's motion for summary judgment on punitive damages.

### III. CONCLUSION

I THEREFORE ORDER that defendant Alexander Hillard's motion for summary judgment **(ECF No. 38) is DENIED**.

I FURTHER ORDER that defendant Alexander Hillard's unopposed motion to seal **(ECF No. 39) is GRANTED**.

DATED this 30th day of June, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE